

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5927 | **DATE** | 1/27/2004 |
| **CASE TITLE** | Marisela Ynocencio vs. Jo Anne B. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Claimant's motion for summary judge is granted, and the Commissioner's motion for summary judgment is denied. This case is remanded to the Commissioner for further proceedings consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required, | number of notices | | |
| ✓ | Notices mailed by judge's staff. | JAN 2 8 2004 | | |
| | Notified counsel by telephone. | date docketed | | 15 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | 1/27/2004 | | |
| | | | date mailed notice | |
| DK | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | DK mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARISELA YNOCENCIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 03 C 5927 |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | Magistrate Judge Morton Denlow |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED

JAN 2 8 2004

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Marisela Ynocencio ("Claimant" or "Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security, Jo Anne B. Barnhart ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under § 216(i) and § 223 of the Social Security Act. 42 U.S.C. §§ 416(i), 423(d). This case comes to this Court on cross-motions for summary judgment. Plaintiff raises the issues of whether the Administrative Law Judge ("ALJ") properly disregarded the testimony of Claimant's treating physician in favor of the testimony of the Medical Expert ("ME") and whether the ALJ committed legal error by failing to clarify important ambiguities in the record, resolve conflicts, and obtain important medical information. For the reasons stated below, Claimant's motion for summary judgment is granted and the Commissioner's motion

15

for summary judgment is denied. The case is remanded to the Commissioner for further proceedings.

## II. BACKGROUND

### A. PROCEDURAL HISTORY

Claimant applied for DIB on September 11, 2001, claiming that she became disabled on September 14, 2000. R. 84-86. Her application was denied on October 17, 2001, R. 66, and she filed a timely request for reconsideration on October 31, 2001, R. 72, which was denied, R. 67. On April 26, 2002, Claimant requested an administrative hearing.

On April 3, 2003, ALJ James A. Horn conducted a hearing at which Claimant, who appeared with counsel, and ME Dr. George Tsatsos testified. R. 32-65. ALJ Horn issued a decision on May 27, 2003, denying Claimant's application for DIB on the grounds that Claimant was not disabled because she retained the residual functional capacity ("RFC") to perform a full range of sedentary work. R. 11-18. Claimant timely requested a review of the ALJ's decision by the Appeals Council, R. 10, which denied the request on July 25, 2003, R. 5-9. Thus, the ALJ's decision is the final decision of the Commissioner. Claimant filed a timely complaint with this Court on August 22, 2003, and jurisdiction is proper pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## B.  HEARING TESTIMONY

### 1.  Claimant's Testimony

At the time of the administrative hearing, Claimant was a thirty-one year-old married woman with a ninth-grade education and two children, ages ten and four. R. 41. Prior to September 2000, Claimant had worked in various positions, such as waitress, cashier, and stock person, at retail stores and at restaurants. R. 42-43. Her most recent position was as a department supervisor at a Kohl's store in Batavia, Illinois. R. 41. Her duties as department supervisor included moving part of the store's stock from the dock and the stockrooms to the display racks on the main floor of the store. R. 42. She has not worked since September 2000. R. 43.

Claimant stated that she presently can not work because she can "barely do anything" as a result of the pain in her neck caused by a work-related injury that occurred on September 14, 2000. *See* R. 41, 43, 46. She complains of constant pain running from the back of her neck, down her spine, into her right shoulder, and down her arm to her elbow. R. 46-48. Turning her neck and sitting too long tend to cause an increase in the pain. R. 52. Claimant testified that she can sit only for a duration of twenty to thirty minutes. R. 53. She also states that she can not stand or walk for long periods of time. R. 118. Claimant has received injections for the pain, but they have given her only "a little bit" of relief for only a couple of days. R. 48-49. Narcotic pain relievers are ineffective because she has problems with dependency and has gone through withdrawal in the past. R. 44. To manage the pain, she

takes Tylenol or Advil. R. 49. To relieve the pain, she must lay down several times a day for an hour or more at a time. R. 48.

A typical day for the Claimant involves preparing something for her child to eat in the morning and laying on the couch to watch television. R. 52. The extent of her activities involves tending to her children. *Id.* Her husband does the cleaning. *Id.* Although Claimant states that she can not drive because she can not move her neck, she also states that she does drive when she takes her older child to and from school or when someone can provide her with side vision. R. 118.

## 2.     Dr. Bruce Montella - Treating Physician

The testimony of Claimant's treating physician, Dr. Bruce Montella, an orthopaedic surgeon, was presented to the ALJ in the form of an evidence deposition taken for the purpose of Claimant's workers compensation claim. R. 49, 188. Dr. Montella first saw Claimant on May 17, 2001, at which time he physically examined her, finding no "inconsistency or incongruency in the way she described her symptoms or behaved." R. 190-91. He determine that she had ongoing spasms around her neck and "limited cervical spine range of motion on all planes with reproduction of symptoms in extremes of cervical range of motion" resulting from an injury sustained at work while doing heavy lifting. *Id.* A review of Claimant's MRI revealed disc bulges at C5-6 and C6-7, as well as a larger bulge or protrusion at C4-5. R. 191. Dr. Montella prescribed non-operative treatments and concluded that "it was unreasonable for her to participate in work in any way." R. 191-92.

4

On May 26, 2001, Claimant underwent an EMG study, which Dr. Montella found to be normal. R. 192. He remarked, however, that an "EMG is noted to be insensitive to determining the presence of pathology," which he opined to be true in this case. *Id.*

By June 29, 2001, Dr. Montella surmised that Claimant's condition was not improving with the non-operative treatment he had prescribed, so he recommended and performed four series of epidural steroid injections with limited transient benefit. R. 193.

On July 14, 2001, Dr. Montella admitted Claimant to Alexian Brothers Medical Center for intractable pain of the nature he had been treating. *Id.* At that time, another MRI was performed of Claimant's cervical spine. *Id.* That MRI generally was consistent with Claimant's prior MRI, but there were changes at discs C4-5 and C5-6 and more pronounced changes at disc C3-4. R. 194.

Dr. Montella then referred Claimant to Dr. Scott Greenwald for a second opinion on July 16, 2001. *Id.*; R. 144. According to Dr. Montella, Dr. Greenwald's prognosis of Claimant's condition was essentially the same as his own, and Dr. Greenwald ordered another series of injections on July 18, 2001. R. 194-95. After that set of injections, Claimant experienced persistent and debilitating pain that was managed by oral pain medications. R. 195.

Dr. Montella next examined Claimant on August 2, 2001. *Id.* At that time, Claimant had ongoing difficulties consistent with prior evaluations. R. 196. Dr. Montella continued Claimant on pain management with oral medications, considered additional injections,

prescribed anti-inflammatories and physical therapy, and recommended that she not work. *Id.* Between August 30, 2001, and December 23, 2002, Claimant's last visit with Dr. Montella, Dr. Montella evaluated Claimant eleven times, finding no significant changes in her condition. R. 196-202. His assessment of her condition did not change, and the only change to her pain management strategy came in the form of narcotic medications, to which she had an allergic reaction that hospitalized her on December 13, 2001. *Id.*

Dr. Montella's final diagnosis is that Claimant has cervical disc herniation at multiple levels and subsequent cervical radiculitis. R. 202, 205. He believes the condition is permanent. R. 202. Surgery, according to Dr. Montella, is a last resort because multiple levels of pathology diminish the likelihood of surgical benefits and increases the morbidity inherent in the surgery. R. 205.

### 3.     Dr. George Tsatsos - Medical Expert

Dr. George Tsatsos, an orthopaedic specialist, testified as the medical expert. R. 54-64, 81. He reviewed Claimant's medical records but never examined her. R. 59. Dr. Tsatsos's review of the medical records indicates that Claimant has degenerative disc disease of the cervical spine and symptoms of radiculopathy going down to the right lower extremity. R. 56. Her neurological exams were normal. *Id.* That leaves an element of pain remaining. *Id.* Consequently, Dr. Tsatsos opines that Claimant's condition does not meet or equal a listing. *Id.*

6

Dr. Tsatsos concluded that Claimant could lift twenty pounds occasionally and ten pounds less than frequently, making the work level she would be capable of performing sedentary with some light work. R. 56-57. In other words, she could pull or push ten or twenty pounds occasionally but not necessarily lift that much. R. 57. She would have to use her right hand to assist her left hand, and she would have to take over-the-counter pain medication to do this level of work. R. 57-58. One hour breaks would be too long for her condition. R. 58-59.

Dr. Tsatsos testified that Dr. Montella's finding of disc problems at multiple levels was accurate. R. 59. However, he expressed concern with Dr. Montella's diagnosis of herniated discs because such a diagnosis was at odds with the radiologist's MRI report, which indicates degenerative disc disease. R. 59-60. Dr. Tsatsos noted that Dr. Montella also referred to the discs as bulging, which is a different condition, and speculated that Dr. Montella may have had a "slip of the tongue" when he said the discs were herniated. R. 61. It was unclear to Dr. Tsatsos whether Dr. Montella intended to say "herniated." *Id.*

Dr. Tsatsos concluded that the record does not support a pathology severe enough to cause pain as intense and persistent as Claimant claims to suffer because the discs do not impinge upon the spinal cord and the EMG tests were normal. R. 57. However, he could not disagree with Dr. Montella's testimony about Claimant's subjective symptoms, such as neck spasms and radiating arm pain, R. 61-62, and admitted that there would be some pain, R. 57.

Furthermore, he agreed with Dr. Montella's use of conservative treatment and stated that dissuading Claimant from surgery was appropriate. R. 62-63.

## C. OTHER MEDICAL EVIDENCE

### 1. Objective Medical Evidence

#### a. MRI

On July 14, 2001, an MRI of Claimant was performed. R. 154. The diagnostic imaging report identifies disc degeneration and posterior disc protrusion at levels C3-4, C4-5, and C5-6, the most pronounced being at level C3-4. *Id.* There was no evidence of "significant spinal stenosis or cord impingement." *Id.*

The MRI report that Dr. Montella testified to reviewing on May 17, 2001, R. 191, is not in the record.

#### b. EMG

On July 17, 2001, Claimant underwent an EMG study of her right upper extremity. R. 152. The EMG results were normal. *Id.* There existed no clear evidence of mononeuropathy, plexopathy, or radiculopathy. *Id.* The report stated that clinical correlation was required. *Id.*

#### c. X-Ray

On June 14, 2001, an x-ray was taken of Claimant's neck. R. 177. The results were normal, and the disc spaces were well-preserved. *Id.*

On July 19, 2001, another x-ray was taken of Claimant's neck. R. 150. No arthritic changes were identified, the soft tissue was not remarkable, and the cervical spine was within normal limits. *Id.*

## 2. Medical Consultants

### a. Scott Greenwald, M.D.

On July 16, 2001, Dr. Scott Greenwald examined Claimant at the request of Dr. Montella. R. 144-46. His impression was that Claimant had cervical disc degeneration, cervical radiculopathy, and myofascial pain. R. 145. From a physical examination, Dr. Greenwald determined that Claimant had a decreased cervical range of motion, with severe pain in all directions that radiates down her right arm to her right hand. *Id.* He referred Claimant to physical therapy. R. 146.

### b. Bryce Staker, D.C., and Maggie O'Brien, P.T.

On June 6, 2001, Dr. Bryce Staker, a chiropractor, began treating Claimant. R. 180. He observed that Claimant was very protective of her neck and her right upper extremity, making evaluation of cervical restrictions and hypermobility difficult. *Id.* Claimant stated that her pain was a "ten" out of "ten." *Id.* Dr. Staker's diagnosis was cervical disc HNP. *Id.*

On October 1, 2001, Dr. Staker provided information about Claimant to the Bureau of Disability Determination Services. R. 156. He reported a neck injury located at

the cervical spine, which causes debilitating pain, tingling, and numbness in Claimant's right arm. *Id.* Dr. Staker reviewed Claimant's MRI and identified a herniated disc. *Id.*

On June 14, 2001, Maggie O'Brien, a physical therapist, treated Claimant. R. 176. She noted that Claimant's cervical and right shoulder ranges of motion were within normal limits. *Id.* Claimant could not tolerate upper extremity stretching or strengthening exercises. *Id.* After several sessions, Ms. O'Brien observed some mild improvements in Claimant's arm movement, but she noted that Claimant continued to complain of a severe increase in pain with a forward bend in the neck and a moderate increase in pain with a right rotation. R. 175. Ultimately, Ms. O'Brien reported a lack of progress and poor tolerance to almost all therapies and recommended discontinuing physical therapy. R. 171. On October 29, 2001, after forty sessions with Claimant, Ms. O'Brien discharged Claimant, reporting no lasting change in Claimant's functional status, noting that Claimant is "emotionally labile" whenever manual therapy is attempted, and diagnosing Claimant with cervical radiculitis and cervical disc injury. R. 169.

### c. Charles Kenney, M.D. - State Agency Physician

On October 12, 2001, Dr. Charles Kenney, the State Agency Physician, reviewed the evidence in the file to assess Claimant's condition. R. 157-64. He opined that, based on the normal but equivocal EMG, Claimant could lift, push, or pull twenty pounds occasionally and ten pounds frequently and could stand, walk, or sit about six hours in an eight-

hour workday. R. 158. He stated that, based upon the objective evidence, most of Claimant's basis for her disability was based upon her own complaints. R. 163.

## D. DECISION OF THE ALJ

On May 27, 2003, ALJ Horn decided that Claimant is not disabled because she has the capacity to perform a full range of sedentary work. R. 11-18. The ALJ followed the familiar five-step process. At step one, he found that Claimant was not engaged in substantial gainful activity since the alleged onset of her disability. R. 17.

At step two, the ALJ found Claimant's impairments were severe. R. 17. Claimant has an orthopaedic impairment that significantly limits her ability to perform basic work activities. *Id.* At step three the ALJ found Claimant had no impairment or combination of impairments that met or equaled a listed impairment. *Id.*

At step four, the ALJ determined that Claimant is unable to perform any past work. *Id.* To reach this conclusion, he assessed Claimant's residual functional capacity. R. 18. Adopting the ME's RFC, the ALJ found Claimant to be able to perform a full range of sedentary work with the additional ability to push and to pull up to twenty pounds. R. 16-18.

The ALJ disagreed with Dr. Montella's opinion that Claimant experienced debilitating pain and was unable to work for two reasons. *Id.* First, the fact that the radiologist's interpretation of Claimant's MRI identified only arthritic changes and disc protrusions contradicted Dr. Montella's opinion that Claimant had disc herniations at multiple levels. R. 17. Second, there is no indication in the record that Dr. Montella performed any physical

11

examinations to justify his opinion because his notes for September through December 2002, as well as for other office visits, failed to contain physical examination notations. *Id.* The ALJ pointed out that the only physical examination by Dr. Montella disclosed an absence of neurological findings. *Id.*

At step five, the ALJ noted that the Commissioner bore the burden of establishing whether other jobs that Claimant could perform exist in the national economy, given her age, education, work experience, and functional limitations. *Id.* Finding skill acquisition and transferability to be immaterial to the outcome, the ALJ applied Medical-Vocational Rules 201.24 to 201.26, which directed a finding of "not disabled" because there are a significant number of jobs existing in the economy that Claimant could perform. *Id.*

## III. LEGAL STANDARDS

### A. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g), which provides that the findings of the ALJ are conclusive if supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla of evidence is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if the "reasons given by the trier of fact do not

build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

A reviewing court may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence to support the findings. *Id.*; *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). The reviewing court has the power to enter a judgment "affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. 405(g).

## B.    DISABILITY STANDARD

An individual is disabled if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, a disabled individual is eligible for DIB benefits only if that individual is under a disability. *Id.* § 423(a). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation ends if the ALJ,

at any step of the process, finds that the claimant is not disabled. *Id.* The ALJ must inquire: (1) whether the claimant is working in any substantial gainful activity, (2) whether the claimant's impairment is severe, (3) whether the impairments meet or equal a listed impairment in 20 C.F.R., pt. 404, subpt. P, Appendix 1, (4) whether the claimant is able to perform his past relevant work, and (5) whether the claimant's age, education, and past relevant work experience in reference to his residual functional capacity, enables him to do other work. 20 C.F.R. § 404.1520(a)(4)(i)-(v). In order to determine whether the claimant can perform any past relevant work (step 4), the ALJ assesses the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC is defined as the most that an individual can do after considering the effects of physical and mental limitations that affect her ability to perform work-related activities. 20 C.F.R. § 404.1545. The burden of proof is on the claimant through step four; the burden shifts to the Commissioner only at step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## C.    CREDIBILITY DETERMINATIONS

Credibility determinations of the ALJ are given particular weight and will be reversed only if patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). A court can not properly sustain an ALJ's credibility findings regarding pain that are supported by incorrect information or illogical reasoning. *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1095 (E.D. Wis. 2001) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

If the ALJ rejects an entire line of reasoning, he must give his reasoning in order to provide for a meaningful review. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). "In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation." *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984). The ALJ is not required to discuss his reasons for rejecting every piece of evidence; he must, however, discuss the claimant's evidence that contradicts the Commissioner's position. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001). The required level of articulation is heightened when there is conflicting evidence. *Hodes v. Apfel*, 61 F. Supp. 2d 798, 807 (N.D. Ill. 1999) (citing *Amax Coal Co. v. Beasley*, 957 F.2d 324, 327 (7th Cir. 1992)).

## IV. ANALYSIS

Claimant argues that the ALJ's decision should be reversed for two reasons. First, the ALJ improperly discredited and disregarded the opinion of Claimant's treating physician. Second, the ALJ selected and discussed only evidence that favored his ultimate decision and erred by failing to clarify important ambiguities in the record, resolve conflicts, and obtain important medical information. This Court will discuss each reason in turn.

### A. THE ALJ IMPROPERLY DISCREDITED AND DISREGARDED THE OPINION OF CLAIMANT'S TREATING PHYSICIAN.

Generally, more weight is given to medical sources who have examined a claimant than to sources who have not. 20 C.F.R. § 404.1527(d)(1)-(2). This is so especially on issues concerning the nature and severity of a claimant's impairments. SSR 96-5p (1996).

Giving more weight to treating sources is appropriate because such sources are most able to provide a detailed, longitudinal picture of a claimant's medical impairment, and "bring a *unique* perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(d)(2) (emphasis added). Moreover, a treating physician's opinion is controlling unless it is unsupported by the objective medical evidence and is inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999).

Claimant argues controlling weight should be given to the opinion of her treating physician, Dr. Montella, with regard to the severity and persistence of the pain she experiences. The Commissioner argues that the ALJ properly discredited that opinion because it is unsupported by objective medical evidence and is inconsistent with the other evidence in the record. The Court finds that the current record is insufficient because it is ambiguous and requires clarification.

1.    **The Objective Evidence in this Case Is Clouded by Ambiguities and Conflicts that Have Not Been Resolved**

The ALJ points to an MRI as the objective evidence that does not support Dr. Montella's opinion. However, there is both unresolved ambiguity about Dr. Montella's opinion and conflict in the interpretation of the MRI, as well as uncertainty as to whether Dr. Montella physically examined Claimant. These unanswered issues lead this Court to

find that the current record is insufficient to determine whether the objective evidence supports Dr. Montella's opinion.

### a. The Ambiguity and Conflict Surrounding Dr. Montella's Opinion and the Objective Evidence

During his evidence deposition, Dr. Montella opined that Claimant had disc herniations at multiple levels, which caused the pain alleged by Claimant. R. 202. The ALJ found this opinion to be unsupported by the July 14, 2001, MRI report, which found only protrusions and degenerative discs. R. 16-17.

Dr. Montella's opinion, however, was ambiguous. As the ME pointed out, in one instance Dr. Montella referred to Claimant's discs as bulging and later referred to the discs as herniated. R. 61. The ME thought it possible that Dr. Montella may have had a "slip of the tongue" when he referred to the discs as herniated, especially because he had not gone into great detail about his findings and had tried to give a short answer to the question he had been asked. *Id.* Furthermore, it is unclear whether Dr. Montella believes that Claimant could experience the pain she alleges if she suffers from bulging discs instead of herniated discs.

Moreover, the objective evidence upon which the ALJ relies is not concrete. For instance, Claimant's MRI appears to be subject to various interpretations. The radiologist's report interprets the July 14, 2001, MRI as showing disc protrusions, R. 17, but both Dr. Montella and Dr. Staker interpret the MRI as showing disc herniations, R. 202, 156.

Additionally, a May 17, 2001, MRI reveals that Claimant has disc bulges at C5-6 and C6-7, as well as a larger bulge or protrusion at C4-5. R. 191. The subsequent July 14, 2001,

MRI report notes protrusions at discs C4-5 and C5-6 and a more pronounced protrusion at disc C3-4. R. 194. There are inconsistencies between the MRI findings. The July MRI does not mention a bulge at C6-7, and the May MRI does not mention a protrusion at disc C3-4. The July MRI shows that the more pronounced protrusion is at C3-4, and the May MRI shows that the most pronounced protrusion is at C4-5. Dr. Montella testified that he compared the May MRI with the July MRI and found changes at discs C4-5 and C5-6 and more pronounced changes at disc C3-4. R. 154. Moreover, the May MRI was not in the record.

There is no indication in the record that the ALJ attempted to resolve these ambiguities and conflicts surrounding Dr. Montella's opinion and the objective evidence. Without clarification of these issues, the record is inadequate to make a determination of disability.

### b. The Confusion as to Whether Dr. Montella Physically Examined Claimant

The ALJ disagrees with Dr. Montella's opinion that Claimant has debilitating pain and is unable to work because the record does not disclose that Dr. Montella performed any physical examination to justify the opinion. R. 17. The Court is befuddled by this statement.

While questioning Dr. Tsatsos during the hearing on this case, the ALJ discusses a physical examination of Claimant performed by Dr. Montella, during which Dr. Montella found "no sign of inconsistency or incongruency in the way [Claimant] described her symptoms or behaved during the physical exam." R. 61. Furthermore, the ALJ asked Dr.

18

Tsatsos directly whether, at any point during any one of Claimant's visits to Dr. Montella in September, October, or December of 2002, Dr. Montella performed a physical examination of Claimant. R. 63. Dr. Tsatsos replied affirmatively, identifying one date within those three and another date the year before. *Id.* According to Dr. Tsatsos, Dr. Montella examined Claimant less than seven months before the hearing: on September 20, 2002, Dr. Montella noted, "neurologic exam is in tact." *Id.* Dr. Tsatsos also noted that Dr. Montella provided detailed findings from a physical examination of Claimant that was performed on July 14, 2001. R. 64.

A review of Dr. Montella's notes reveal explicit notations of physical examinations on May 17, 2001, July 12, 2001, July 14, 2001, August 2, 2001, and September 20, 2002. R. 132, 173-74, 178, 185. In some instances, when a physical examination was not explicitly noted, there is a notation that Dr. Montella made "an objective assessment of her functional capacity." *See, e.g.*, R. 167. It is unclear if this notation is meant to indicate that a physical examination occurred. In each of the thirteen reports submitted by Dr. Montella, he diagnosed Claimant with pain. The pain persisted for over a year-and-a-half, and was severe and debilitating by the end of that time. R. 183. The pain stemmed from the neck and radiated down the arm. R. 184. It is unclear how, without performing a physical examination, Dr. Montella came to these conclusions. It is even more unclear how a doctor could perform several series of epidural steroid injections without physically examining the patient. Therefore, it clearly appears that Dr. Montella examined Claimant. There is no

evidence that the ALJ attempted to re-contact Dr. Montella to determine whether he did physically examine Claimant before concluding that no examinations were performed.

### c. The ALJ Erred in Failing to Resolve the Ambiguity and Conflict Surrounding Dr. Montella's Opinion and the Objective Evidence

If the evidence received from a treating physician or other medical source is inadequate to make a determination of disability, those sources must be re-contacted to obtain any readily available additional information. 20 C.F.R. § 404.1512(e)(1). Additional evidence or clarification from a medical source must be sought when there is a conflict or an ambiguity that must be resolved, necessary information is missing, or a report does not appear to be based upon objective evidence. *Id.* It is the duty of the ALJ to develop a full and fair record. *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999). Failure to fulfill this obligation is "good cause" to remand for the gathering of additional evidence. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).

In this case, the ALJ failed to develop a full and fair record. He should have re-contacted Dr. Montella to determine whether the doctor diagnosed a disc herniation, especially because Dr. Staker also determined that the MRI revealed a disc herniation. That determination is key to supporting Claimant's allegations of pain. Additionally, the ALJ should have made an attempt to obtain the May MRI from Dr. Montella. 20 C.F.R. § 404.1512(e)(1). The condition of Claimant's discs are vital to the outcome of this case because it could provide Claimant with the objective evidence necessary for her to show the existence of a medical impairment resulting from anatomical or physiological abnormalities

20

that reasonably could be expected to produce the pain she alleges. *See* 42 U.S.C. § 423(d)(5)(A).

Finally, to the extent that there is any doubt as to whether Dr. Montella physically examined Claimant, the ALJ should re-contact Dr. Montella to find out. The ALJ should determine whether Dr. Montella physically examined Claimant, on what dates, and the conclusions reached as a result.

## 2. Dr. Montella's Opinion Is Not Inconsistent with the Record

Controlling weight is given to a treating physician's opinion unless it is "not inconsistent" with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The opinion need not be "consistent" with the record. *Dominguese*, 172 F. Supp. 2d at 1100. This is not a matter of mere semantics. *Id.* The "not inconsistent" standard presumes that the treating physician's opinion is predominate and requires the ALJ to search the record for inconsistent evidence in order to give the treating source's opinion less than controlling weight. *Id.* Under the "consistent" standard, the opinion has controlling weight only if the record supports it. *Id.*

Even if Dr. Montella's opinion should not be given controlling weight, several factors must be applied to determine the weight to give that opinion. 20 C.F.R. § 404.1527(d)(2). The ALJ must consider the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) The nature and extent of the treatment relationship; (3) the amount of relevant evidence, especially medical signs and laboratory findings, that

supports the opinion; (4) the consistency between the opinion and the record; (5) whether the treating physician's opinion is related to that physician's area of specialty; (6) any other factors, which can be raised by the claimant or any one else, that tend to support or contradict an opinion. *Id.* § 404.1527(d)(2)-(6).

The Court agrees that the MRI results are significant to the weight to be given to Dr. Montella's opinion. That controversy must be resolved as a threshold issue. However, putting the controversy surrounding the interpretation of Claimant's MRI aside, Dr. Montella's opinion regarding the severity and persistence of Claimant's pain is "not inconsistent" with the record. In fact, the bulk of the evidence is consistent with his opinion, and even if the ALJ determines that Dr. Montella's opinion does not deserve controlling weight, the following should be considered in determining what weight to give that opinion.

First, Plaintiff failed to improve after forty sessions of physical therapy because she could not tolerate stretching and strengthening of her right upper extremity. R. 176. The inability to tolerate such minor exercise is not inconsistent with Dr. Montella's opinion.

Second, contrary to the ME's testimony, the MRI report of July 14, 2001, states that there is no evidence of "*significant* spinal stenosis or cord impingement." R. 154 (emphasis added). This statement does not say that the discs do *not* impinge upon the spinal cord; to the contrary, the statement suggests that there is some impingement. The existence of even slight impingement is not inconsistent with the existence of the pain diagnosed by Dr. Montella.

Third, although the ALJ contends that the normal EMG results support a finding that Claimant is not experiencing the severity and persistence of pain that she alleges, Dr. Montella's remark that an "EMG is noted to be insensitive to determining the presence of pathology," which he opined to be true in this case, is not inconsistent with the record. R. 192. The EMG report, which one doctor labeled equivocal, R. 158, states that there existed no clear evidence of radiculopathy, R. 152, yet Drs. Montella, R. 202, Tsatsos, R. 56, and Greenwald, R. 145, as well as Ms. O'Brien, R. 169, diagnosed Claimant with the condition. The diagnosis of a pathology where the EMG could not find evidence of one is not inconsistent with Dr. Montella's opinion.

Fourth, Dr. Montella obtained a second opinion from Dr. Greenwald. Dr. Greenwald's findings, based on a physical examination of Claimant, were consistent with Dr. Montella's opinion. For example, Dr. Montella indicated that Dr. Greenwald agreed that Claimant was having problems with her neck.

Finally, the Claimant's own testimony as to the severity and persistence of her pain and its debilitating effects lends credence to Dr. Montella's opinion. The foregoing facts illustrate that the record is not inconsistent with Dr. Montella's opinion.

### 3.    Claimant Should be Examined by the ME or by an Independent Doctor

If a conflict in the medical evidence persists, Claimant should undergo additional consultative examinations by a different physician to determine whether her pain is as severe and debilitating as she alleges. 20 C.F.R. § 404.1512(f). If there is a significant difference

in opinion between a claimant's treating physician and the ME about a diagnosis, the ALJ should have the ME or another physician examine the claimant to determine whether there can be agreement with the treating physician's diagnosis. *Blackwell v. Barnhart*, 258 F. Supp. 2d 851, 862 (N.D. Ill. 2003). In this case, there is a significant difference in opinion between Dr. Tsatsos and Dr. Montella on the important fact of whether Claimant does experience severe and persistent pain to the degree alleged, notwithstanding whether she suffers from bulging or herniated discs. However, Dr. Tsatsos has never examined Claimant. Doing so may eliminate the differences of opinions.

This case is about pain. In this case, pain is the factor upon which the fifth step of the disability analysis turns because a decision of "disabled" may be appropriate if, per her RFC, Claimant does not have the ability to perform a *full* range of sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(3). Dr. Montella opines that the pain experienced by Claimant prevents her from performing a full range of sedentary work. Dr. Tsatsos, on the other hand, opines that Claimant can perform a full range of sedentary work because the objective evidence does not support a finding of pain as severe and persistent as Claimant alleges. It is difficult to understand how the ALJ could have disposed of this case by relying on the opinion of a doctor who never physically examined the claimant to evaluate such a subjective symptom as pain.

The regulations recognize that pain causes a disorder commonly associated with disc problems to affect individuals differently: "someone with a low back disorder may be fully

24

capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis." 20 C.F.R. § 404.1545(e). When assessing symptoms as subjective as pain, it is imperative that the ALJ consider the evidence provided by treating sources and give their opinions as much weight as possible, even if not controlling weight.

In this case, the ALJ gave more weight to Dr. Tsatsos's opinion than to Dr. Montella's opinion. Dr. Tsatsos, however, can not give a satisfactory opinion about the pain being experienced by Claimant without physically examining her. He testified that he could not disagree with Dr. Montella about Claimant's subjective symptoms. R. 61-62. Therefore, he cannot assess the actual degree of pain experienced by Claimant and how that pain affects her disorder.

Because of the significance of the difference of opinion between Dr. Tsatsos and Dr. Montella and the fact that the ALJ relied heavily upon a non-treating physician for evidence of a subjective symptom, Claimant must be examined by Dr. Tsatsos or an independent physician. The doctor who exams Claimant must determine if Dr. Montella's diagnosis regarding the severity and persistence of Claimant's pain can be supported.

**B.    Remand**

In this case, remand is warranted because there is reason to believe that it might lead to a different decision. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Furthermore, the record is not so clear that benefits can be awarded or denied. *See Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). The determination of a benefits award is essentially a factual finding best left to the Commissioner because the record can not yield one supportable conclusion. *Id.*

The Court remands this case so the issues surrounding the condition of Claimant's discs and the degree of pain experienced by Claimant can be clarified. The following should be addressed on remand:

1. Whether Dr. Montella diagnosed Claimant with a herniated disc and the objective medical basis for the diagnosis;

2. Whether Dr. Montella physically examined Claimant, on what dates, and with what conclusions;

3. Whether a medical examination conducted by Dr. Tsatsos or an independent doctor reaches the same diagnosis as Dr. Montella and the objective medical basis for the diagnosis.

## V. CONCLUSION

Claimant's entitlement to DIB turns on the issue of whether Dr. Tsatsos's diagnosis of Claimant's functional limitations is correct. The record contains too many conflicts and ambiguities to make a disability determination feasible at this time. Dr. Montella must be contacted to resolve these ambiguities. Furthermore, Claimant should be examined by Dr. Tsatsos or an independent physician to see whether they agree with Dr. Montella's diagnosis.

For the aforementioned reasons, **Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied.** This case is remanded to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED THIS 27TH DAY OF JANUARY, 2004 .**

*Morton Denlow*

**MORTON DENLOW**
**United States Magistrate Judge**

Copies mailed to:

Agustin G. Garcia
53 West Jackson
Suite 730
Chicago, IL 60604

Attorney for Plaintiff

Anne Lipnitz
SPECIAL ASSISTANT
UNITED STATES ATTORNEY
200 West Adams
30th Floor
Chicago, IL 60606

Attorney for Defendant